UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN WITCHER,

          Petitioner,

                                     Case No. 1:06-cv-379
v.                                     Hon. Janet T. Neff

JOHN PRELESNIK,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

This case arises from the ambush of three police officers by petitioner, Milo Fitzpatrick and Earnest Brooks. One or more shooters used semi-automatic weapons to fire on the officers from a van. Following a jury trial, in which petitioner was tried jointly with Milo Fitzpatrick, the jury convicted petitioner of three counts of assault with intent to commit murder, M.C.L. § 750.83, three counts of felony-firearm, M.C.L. § 750.227b(A), and one count of felon in possession of a firearm, M.C.L. § 750.224f. *People v. Deshawn Darelle Witcher*, No. 236188, slip op. at 1 (Mich. App. Aug. 19, 2003).[1] Petitioner was sentenced as a second-habitual offender, M.C.L. § 769.10, to a term of imprisonment of 50 to 75 years for the assault with intent to commit murder and felony-firearm convictions. *Id.* Petitioner was also sentenced to 47 to 90 months

_____

[1] Petitioner's appeal was combined with the appeal of co-defendant Milo Fitzpatrick in a single unpublished opinion. *See People v. Fitzpatrick*, No. 236187 (Mich. App. Aug. 19, 2003).

imprisonment for the felon in possession of firearm conviction, to be served concurrently with the sentences for his assault with intent to commit murder convictions.  *Id.*

Petitioner, through counsel, presented five issues in his direct appeal to the Michigan Court of Appeals:

I.    The trial court denied [petitioner] his constitutional rights to counsel and a fair trial by removing his attorney of choice when there would have been no conflict of interest had the court not joined the two defendants' trial [i.e., petitioner and Fitzpatrick].  In other words, the 'efficient administration of justice' trumped [petitioner's] rights under the Sixth Amendment.

II.   The prosecutor violated [petitioner's] state and federal constitutional due process right to a fair trial by engaging in repeated instances of misconduct. If trial counsel waived the error, he deprived [petitioner] of effective assistance.

  A.   The prosecution used extremely inflammatory rhetoric in its closing, involving comparisons of the facts of this case to the actions of communists killing American soldiers in war.  In a trial which was already highly charged, as it involved the shooting of a police officer, this is inexcusable.

  B.   The prosecution violated a stipulation entered before the trial, that they would not amend their theory, that [petitioner] used a <u>firearm</u> to assault the officers, by arguing that [petitioner] also used the <u>van</u> as a weapon to assault the officers.  Also, this act of the prosecution caused a fatal variance between the information and the proofs at trial.

III.  The evidence is insufficient to support the three verdicts of assault with intent to commit murder by [petitioner], and [petitioner] has been denied due process of law.  US Const Am IV; Mich Const 1963 Art I, § 17.

IV.   [Petitioner] must be resentenced on Counts 3 and 5, assault with intent to murder.  The court departed from the statutory sentencing guidelines to impose prison terms which excess the recommended range by more than eleven years, representing a 28% increase over

2

the recommended sentence, without articulating a "substantial and compelling" reason and, apparently, without completing a sentencing guidelines departure form.

V.      [Petitioner] is entitled to resentencing because the statutory sentencing guidelines were misscored as to several offense variables, and the sentence derives from incorrectly scored offense variables.

Brief on Appeal (docket no. 33) (emphasis in original).  The Michigan Court of Appeals affirmed the convictions, but vacated the sentences on counts 3 and 5 and remanded for resentencing before a different trial judge.  *People v. Deshawn Darelle Witcher*, No. 236188, slip op. at 11.

In his pro se application for leave to appeal to the Michigan Supreme Court, petitioner raised the five issues listed above as well as the following new issues (in his words):[2]

VI.     Prosecutorial misconduct violation of my (appellant Witcher) due process rights failing to be compliant with "appearance and demand requested order."

VII.    Ineffective assistance of defense counsel appearance and demand requested order, which hampered the performance of my defensive theory, in which resulted in a miscarriage of justice; reversal is required.

VIII.   Juror #5 shows bias prejudice conclusion of guilty verdict. [Rev. is Req.].

*See* docket no. 34.  The Michigan Supreme Court denied petitioner's application.  *People v. Deshawn Darelle Witcher*, No. 124583 (Mich. Feb. 27., 2004).

Petitioner was re-sentenced on May 21, 2004 before a different judge.  Sent. Trans. (May 21, 2004).  On re-sentencing, the new judge departed from the guidelines and imposed the same sentence of 50 to 75 years.  *Id.* at 21.  In reaching this sentence, the court observed that

_____

[2] The court has quoted petitioner's pro se claims as presented, rather than attempting to interpret or paraphrase the claims.

3

Michigan's sentencing guidelines did not cover the circumstances of this case: an ambush of police officers with "high-powered rifles being aimed and shot repeatedly at officers who are unable to protect themselves at the time the firing starts;" the use of "semiautomatic assault rifles that are meant for weapons of war; " the fact that over 50 rounds of ammunition were exchanged in 29 seconds; and the fact that "there was no reason to fire" because although petitioner and the other defendants could have driven away from the scene, "they took it upon themselves and formed in their own minds they were gonna kill three officers." *Id.* at 15.

Petitioner, through counsel, appealed the re-sentencing raising the following issue:

> I. Did the trial court err by departing upward in imposing the sentence since the court's stated reasons were not permissible factors and/or were already accounted for in the sentencing guidelines?

Brief on appeal (docket no. 39). Plaintiff also filed a pro se supplemental brief raising the following issue (in his own words):

> II. Defendant-appellant was denied due process of his sixth amendment; Trial court abused it's discretion by allowing non-testifying co-defendant declarant (Fitzpatrick) pronoun and indefinite word/s of out-of-court testimonial statement to be admitted into evidence.

*Id.* The Michigan Court of Appeals affirmed petitioner's sentence. *People v. Deshawn Darelle Witcher*, No. 256562 (Mich. App. Feb. 16, 2006). The Michigan Supreme Court denied petitioner's application for leave to appeal, which raised only counsel's "Issue I." *People v. Deshawn Darelle Witcher*, No. 130850 (Mich. Sept. 20, 2006).

While this appeal was pending, petitioner filed another claim of appeal, which the Court of Appeals dismissed as redundant of Appeal No. 256562. *People v. Deshawn Darelle Witcher*, No. 256911 (Mich. App. Aug. 9, 2004) (docket no. 35). Petitioner did not appeal this order

to the Michigan Supreme Court.  *See* Affidavit of Corbin R. Davis, Clerk for Michigan Supreme Court (docket no. 35).

Petitioner filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*, raising seven claims. The trial court denied the motion, on the ground that all of the claims, with the exception of a claim of ineffective assistance of appellate counsel, could have been raised in his original appeal.  *People v. Witcher*, Calhoun Cir. Ct. No. 00-4624 FC (Order, Feb. 1, 2004; filed Feb. 2, 2005) (docket no. 37).  Petitioner appealed the trial court's order, raising three issues in his application for leave to appeal to the Michigan Court of Appeals (in his own words):

I.      Did triasl court error by deny-ing defendant relief from judgement due to the change in the law by violating defendant's sixth amendment right to confrontation clause vilo violation?

II.     Did trial court commit clear error on finding of facts to deny-ing motion for relief from judgement where it did not finding prosecutorial misconduct during closing arguement inflammatory?

III.    Did trial court also error in deny-ing defendant relief from judgement on the 1st day of February 2004; the court showed bias duer to the fact defendant had not filed the 6.500 in pro per motion until the early part of 2005 of January? [3]

Motion for relief from judgment (docket no. 37).  The Michigan Court of Appeals denied the application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Deshawn Witcher*, No. 261622 (Oct. 15, 2005).

Petitioner raised only two issues in his application for leave to appeal to the Michigan Supreme Court (in his own words):

---

[3] It appears that the trial court's order denying petitioner's motion for relief from judgment was incorrectly dated February 1, 2004.  The court notes that this order was filed on February 2, 2005.  *See* docket nos. 14, 37.

    I.      Defendant-Appellant was denied due process of his sixth amendment; t-rial court abused it's discretio-n by allowing non-testifing co-defendant declarant (Fitzpatrick) pronoun and indefinite word/s of out-of-court testimonial statement to be admitted into evidence and counsel/s was ineffectiveness.

    II.     Trial court also erred denying defendant-appellant relief of judgement thge 1st day of February 2004; the court showed bias due to the fact defendant-ap-pellant had <u>not</u> filed the 6.500 in pro per motion for relief from judgement until the early part of 2005 of January.

Application for leave to appeal (docket no. 38) (emphasis in original). The Michigan Supreme Court denied leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Witcher*, No. 130048 (April 28, 2006).

Petitioner filed the present petition on June 1, 2006, raising four grounds for habeas relief (in his own words):

    I.      The trial Court denied Defendant constitutional Rights to Counsel by removing his Attorney of choice.

    II.     Prosecution violated Petitioner Witcher's State and Federal const. Due process right to a fair trial by engaging in repeated instances of misconduct.

    III.    The evidence is insufficient to support the three verdicts of Assault w/Inent to commit Murder by Petitioner.

    IV.    Trial Court abused it's discretion by admitting over defense objection out-of-court testimonial statement. Ineffective Assistance of Appellate Counsel.

Petition (docket no. 1).

In addition to these four grounds, the petition includes a parenthetical statement "(See: attached issues for all other grounds)". Petition at p. 8. While the petition included 142 pages of attachments, including portions of petitioner's appellate brief, there is no document setting forth additional "attached issues." Petitioner's reply to respondent's answer consists of a nearly

6

incomprehensible 147-page  "[Brief] in support of habeas petition" (docket no. 12).  In this brief, petitioner attempts to re-write the petition by raising *twenty* issues, most of which are unrelated to the four issues set forth in the petition.  The court will not expand the issues raised in this habeas petition to include unidentified "attached issues" or numerous issues raised for the first time in a reply brief.  "Unlike the generous notice-pleading standard for the benefit of ordinary civil plaintiffs under Federal Rule of Civil Procedure 8(a) [citation omitted], Habeas Corpus Rule 2(c) requires habeas petitioners to 'specify all the grounds for relief available,' and to 'state the facts supporting each ground.'"  *See Mayle v. Felix*, 545 U.S. 644, 669  (2005).  While the court construes pro se pleadings liberally, it should not assume the role of advocate for pro se litigants and may not rewrite a petition to include claims that were never presented, and certainly not exhausted.  *See, Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  Accordingly, the court will review only the four issues clearly designated in the petition.

## II.     Procedurally defaulted claims

### A.     Procedural default doctrine

Respondent contends that Issues II and IV are barred from habeas review under the procedural default doctrine.  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner

can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every

state procedural rule will warrant application of the procedural default doctrine.  Only a procedural

rule that was "'firmly established and regularly followed' by the time as of which it [was] to be

applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For

a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner

must have violated a procedural rule, but the state court must also have based its decision on the

procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

> **B.**     **Procedurally defaulted issues**
>
> **1.**     **Prosecutorial misconduct (Issue II)**

Petitioner raised the prosecutorial misconduct claims on appeal.  However, because

petitioner did not preserve this claimed error by objecting at trial, the Court of Appeals reviewed the

prosecutorial misconduct issue for plain error.  *People v. Deshawn Darelle Witcher*, No. 236188,

slip op. at 8.  This issue is procedurally defaulted for purposes of federal habeas review.  "[A] state

court's plain error analysis does not save a petitioner from procedural default.  Plain error analysis

is more properly viewed as a court's right to overlook procedural defects to prevent manifest

injustice, but is not equivalent to a review of the merits."  *Lundgren v. Mitchell*,  440 F.3d 754, 765

(6th Cir. 2006) (citations omitted).  *See Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989)

(limited review of an issue to prevent manifest injustice does not constitute a waiver of the

procedural default).

### 2.      Out of court statement (Issue IV)

This claim is difficult to decipher.  Petitioner apparently contends that it was error

for prosecution to present the testimony of Deputy Michelle Hunt, an employee at the Calhoun

County Jail.  Trial Trans. 9 at p. 76.  By way of background, the government did not call Hunt in its

case in chief.  *Id.* at 78-79.  Co-defendant Fitzpatrick's counsel called Hunt in an unsuccessful

attempt to cross-examine her (during the defense's case in chief).  *Id.* at 76-80.  During its

examination, the prosecution elicited testimony that co-defendant Fitzpatrick told Deputy Hunt "that

the police had shot his boy, meaning Earnest Brooks, and killed his boy, and that he was laying

down in the van and that the police had shot first."  *Id.* at 80-81.  On re-direct examination, Deputy

Hunt testified that Fitzpatrick told her that "he did not shoot" and that "his boy" was the one

shooting.  *Id.* at 82-83.

Petitioner attempted to raise this issue twice.  First, he included it in a pro se

supplemental brief in his second appeal,  *People v. Deshawn Darelle Witcher*, No. 256562 (docket

no. 39).  However, it appears that this appeal was limited to issues arising from his re-resentencing.

In any event, the Michigan Court of Appeals did not address this unrelated claim and petitioner did

not exhaust it by seeking an application for leave to appeal with the Michigan Supreme Court.

Petitioner also raised this issue in his application for leave to appeal his MCR 6.500

*et seq.* motion to the Michigan Supreme Court, but did not raise the issue in his application for leave

to appeal to the Michigan Court of Appeals.

As a general rule, a habeas petition containing unexhausted claims should be

dismissed without prejudice to allow the petitioner to present his claims to the state courts.  *See Rose*

*v. Lundy*,  455 U.S. 509, 518-20 (1982).  Here, however, petitioner has filed his motion for post-

9

conviction relief pursuant to MCR 6.500 *et seq.* and has no further avenue to exhaust in the state courts.  Accordingly, this claim is  subject to the procedural default doctrine, because petitioner failed to give the state courts a "full and fair" opportunity to resolve the claim and he cannot cure the failure because the state court remedies are no longer available.  *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004).

### C.    Cause and prejudice

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment.  *Id.*; *Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim which can be  procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Consequently, an ineffective assistance of appellate counsel claim, for example, can serve as the cause to excuse a petitioner's procedural default on another claim only if the petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of appellate counsel claim itself. *Lancaster v. Adams*, 324 F.3d 423, 438 (6th Cir. 2003)

Petitioner's claim of ineffective assistance of appellate counsel is both unexhausted and procedurally defaulted.  Petitioner did not raise this issue in the Michigan courts.  He has not demonstrated any cause for his failure to raise this claim, as most prisoners do, in his MCR § 6.500 motion.   In the absence of cause, it is unnecessary to consider any prejudice resulting from this alleged error of federal law.  Because petitioner procedurally defaulted the ineffective assistance of counsel claim, he cannot utilize this claim as "cause" to excuse his other procedurally defaulted claims.  *Beuke v. Houk*, 537 F.3d 618, 632-33 (6th Cir. 2008).

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a  "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted  to find him guilty beyond a reasonable doubt."  *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000)  ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial."  *Paffousen*, 2000 WL 1888659 at *3.  Because petitioner offers no such new evidence that he

is actually innocent of the crimes for which he was convicted, he has failed to meet the fundamental miscarriage of justice exception.  Accordingly, petitioner's claims II and IV are procedurally barred and not subject to habeas review.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted all of the remaining issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

## IV. Petitioner's habeas claims

### A. Petitioner's right to appointed counsel of his choice (Issue I)

Petitioner contends that the court violated his right to appointed counsel of his choice. On November 7 and 21, 2000, petitioner and co-defendant Fitzpatrick had a joint preliminary examination in Michigan's Tenth District Court. *See* Prel. Exam Trans. I and II (docket nos. 15 and 16). At that time, Attorney Frazho represented petitioner and Attorney Mierendorf represented Fitzpatrick. Prel. Exam. Trans. I at 5. Mierendorf was identified as being part of a group known as the "West Michigan Defense Group." Motion to Disqualify Defense Firm Trans. at 4. In February 2001, Attorney Mierendorf withdrew from Fitzpatrick's case because of a conflict, which led the court to appoint Attorney Brundage to represent Fitzpatrick. *Id.* On March 5, 2001, the prosecutor moved to disqualify Attorney Frazho from representing petitioner because "at one point

during the process," Frazho, another attorney affiliated with the "West Michigan Defense Group," appeared on Fitzpatrick's behalf for Mierendorf. *Id.* at 3-4, 11, 21. The prosecution also objected to replacing petitioner's counsel "with the appointment of counsel from the West Michigan Defense Group," and raised the issue of whether the group was in fact a law firm. *Id.* at 5-6.

Attorney Frazho advised the court that she had a "minimal conversation" with Fitzpatrick at the preliminary examination, where she represented Fitzpatrick for the purpose of requesting an adjournment of the examination. *Id.* at 10. At that time, petitioner was represented by Attorney Sullivan, who was withdrawing from the case. *Id.* The court later appointed Attorney Cairns to represent petitioner, who also withdrew.[4] *Id.* at 10-11. Finally, the court appointed Frazho to represent petitioner. *Id.* Upon questioning by the court, Frazho admitted that there was a possibility that she gained information from Fitzpatrick that she could use in her representation of petitioner. *Id.* at 15-16. Frazho disagreed with the court's characterization of the West Michigan Defense Group as a "firm," but then made confusing and internally inconsistent representation to the court that the group was "a loosely affiliated partnership, that is with respect to Internal Revenue Service and our incorporation documents." *Id.* at 16-17. The prosecutor responded by stating that attorneys at the West Michigan Defense Group constitute a law firm for purposes of disqualification, noting that they "co-mingle their files," as demonstrated by Attorney Frazho's appearance for Attorney Mierendorf, and pointing out Frazho's statement that the group was incorporated. *Id.* at 19.

The trial court reviewed the applicable Michigan Court rule that "the court must inquire into the potential for a conflict of interest that might jeopardize the right of each defendant

---

[4] It is unclear whether either Sullivan or Cairns were affiliated with the West Michigan Defense Goup.

to the undivided loyalty of the lawyer," whenever two or more defendants "who have been jointly

charged or whose cases have been joined" are represented by the same retained lawyer or lawyers

associated in the practice of law." *Id.* at 21.  The court found that because Frazho's conversations

with Fitzpatrick may have some impact on her ability to represent petitioner, another attorney should

be appointed to represent petitioner.  *Id.* at 24-25.  The Court further found that petitioner should be

represented by someone other than the West Michigan Defense Group.  *Id.* at 29-30.  Ultimately,

the court ruled that "Ms. Frazho is disqualified from representing Mr. Witcher and an attorney from

-- other than from the West Michigan Defense Group will be appointed to represent Mr. Witcher."

*Id.* at 31.

> The Michigan Court of Appeals addressed the issue as follows:
>
> Witcher first argues that the trial court's removal of his court-appointed attorney, Antoinette Frazho, over his objection, violated his Sixth Amendment right to counsel and denied him a fair trial because there was no basis for her disqualification.  Witcher asserts that at the time of the motion hearing to disqualify Frazho, there was no potential conflict of interest because defendants' trials were not joined until the following month.  We disagree.
>
> First, defendants' preliminary examinations were held jointly.  Also, in his answer to the prosecution's motion to disqualify Frazho, Witcher admitted that he and Fitzpatrick were co-defendants.  Although defendants' trials had not yet been consolidated, such a motion surely could have been anticipated.  Second, even if Witcher had a separate trial, Frazho could have used information gained from her confidential conversation with Fitzpatrick to Witcher's advantage.  Therefore, the fact that defendants' trials were consolidated a month later was not indicative of the existence of a potential conflict of interest.
>
> At the time of Frazho's disqualification, co-defendant Fitzpatrick had been appointed a new attorney, John Brundage.  Witcher contends that there was no conflict of interest between Frazho and Brundage, because Frazho's former "representation" of Fitzpatrick was limited to appearing on behalf of Mierendorf, Fitzpatrick's former attorney, to adjourn the preliminary examination.  MCR 6.005(F) states, in pertinent part,
>
> > When two or more indigent defendants are jointly charged with an offense or offenses or their cases are otherwise joined, the

15

court must appoint separate lawyers unassociated in the practice of law for each defendant. Whenever two or more defendants who have been jointly charged or whose cases have been joined are represented by the same retained lawyer or lawyers associated in the practice of law, the court must inquire into the potential for a conflict of interest that might jeopardize the right of each defendant to the undivided loyalty of the lawyer.

Frazho had previously represented Fitzpatrick, albeit in a limited capacity, before she was appointed as Witcher's counsel. At the motion hearing, the trial court inquired into the extent to Frazho's discussion with Fitzpatrick and any impact the substance of that conversation might have on her ability to favorably or unfavorably represent Witcher. Although Frazho characterized her conversation with Fitzpatrick before the preliminary examination adjournment as "minimal," she did admit that there was a possibility that she could use information revealed in the conversation to Witcher's benefit at trial that would negatively impact Fitzpatrick. This would violate the prohibition on representing a client in the same matter whose interest is materially adverse to the former client. MRPC 1.9(a). The rule allows for such representation where the former client consents; however, Fitzpatrick's objection to the situation was clearly made before the trial court when he objected to Mierendorf continuing as his counsel because of this situation.

Witcher argues that because he did not consent to Frazho's removal, nor was there a showing of "gross incompetence, physical incapacity, or contumacious conduct" on Frazho's part, the trial court had no basis to remove Frazho as his attorney, and thus, violated his Sixth Amendment right to counsel. *People v. Johnson*, 215 Mich. App 658, 663; 547 NW2d 65 (1996). However, the *Johnson* Court continued, and held that once an attorney is serving under a valid appointment by the court and an attorney-client relationship has been established, the trial court may not arbitrarily or unjustifiably remove the attorney over the objection of both the defendant and counsel; to do so violates a defendant's Sixth Amendment right to counsel. *Id.* at 665-666. Our reading of *Johnson* leads us to conclude that a trial court's ability to remove an attorney only for gross incompetence, physical incapacity, or contumacious conduct on the attorney's part applies where such action was not otherwise required by law. Under circumstances of gross incompetence, physical incapacity, or contumacious conduct, an attorney's removal would be justified and not arbitrary.

In this case, the court's decision to remove Frazho was not arbitrary or unjustified, as it was required to do so by the court rules and Michigan's Code of Professional Conduct. Frazho admitted that there was the possibility of a conflict of interest due to her contact with Fitzpatrick. While it appears that Frazho should not have been appointed in the first place, MCR 6.005(F), once the error was revealed, the court was obliged to remedy the situation to ensure a fair trial for both defendants. Therefore, we find that the court did have a basis for disqualifying

Frazho because a potential conflict of interest existed.  Accordingly, Witcher's right to counsel was not violated.

*People v. Deshawn Darelle Witcher*, No. 236188, slip op. at 6-7.

Petitioner contends that the trial court violated his Sixth Amendment rights by substituting counsel without his request or consent.  The court disagrees.  The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defence." An essential element of this right is the right to have counsel of one's choice.  *See United States v. Gonzalez-Lopez*, --- U.S. ----, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409 (2006).  However, the right to counsel of choice is not absolute.  *Id.*  "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Wheat v. United States*, 486 U.S. 153, 159 (1988). A criminal defendant has no Sixth Amendment right to a "meaningful relationship" between himself and his attorney.  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  "[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such."  *Wheat*, 486 U.S. at 159, quoting *United States v. Cronic*, 466 U.S. 648, 657, n. 21 (1984).

Here, the trial court focused its inquiry on whether Attorney Frazho, an attorney affiliated with the West Michigan Defense Group who previously represented a co-defendant in the stead of Attorney Mierendorf (himself a member of the group), could provide her undivided loyalty representing petitioner.  For the reasons stated above, the trial court found that Frazho could not provide such loyalty and remedied the potential conflict by appointing a new attorney who was not affiliated with the West Michigan Defense Group.  Similarly, the Michigan Court of Appeals

17

recognized that the trial court was obliged to remedy the situation to ensure a fair trial for both petitioner and Fitzpatrick. While petitioner has a constitutional right to be represented by the counsel of his choice, the ultimate aim of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159 (emphasis added).

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

### B.   Insufficient evidence (Issue III)

### 1.   The appellate decision

Finally, petitioner contends that there was insufficient evidence to support his three convictions for assault with intent to murder. The Michigan Court of Appeals addressed this issue as follows:

> Witcher also argues that the evidence was insufficient to support his assault with intent to commit murder convictions. In reviewing the sufficiency of the evidence in a criminal case, this Court must view de novo the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Johnson*, 460 Mich. 720, 723; 597 NW2d 73 (1999). Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime. *People v. Carines*, 460 Mich. 750, 757; 597 NW2d 130 (1999). All conflicts in the evidence must be resolved in favor of the prosecution. *People v. Terry*, 224 Mich.App 447, 452; 569 NW2d 641 (1997).

> To prove the crime of assault with intent to murder, the prosecutor must establish: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. The intent to kill may be proven by inference from any facts in evidence. [*People v. Hoffman*, 225 Mich. App. 103, 111; 570 NW 2d 146 (1997)]. The jury was also instructed on aiding and abetting. A conviction for aiding and abetting requires proof that:

18

> (1) the underlying crime was committed either by the defendant or some other person, (2) the defendant performed acts or gave encouragement which aided and abetted the commission of a crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement. [*People v. Wilson*, 196 Mich. App 604, 609; 493 NW2d 471 (1992), quoting *People v. Genoa*, 188 Mich. App 461, 463; 470 NW2d 447 (1991).]

To establish aiding and abetting of a crime, the prosecution must show that someone committed the underlying crime, and that the defendant either committed or aided and abetted the commission of that crime. Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor. *Wilson*, *supra* at 614.

Witcher asserts that there was no evidence to support an intent to kill on his part; that the evidence only established that he was present in the van. We disagree. The evidence established that Witcher was in the driver's seat during the shoot-out and testimony suggested that at least two shooters were present in the van, one in the front and one in the middle of the van. The shooting began while all three officers were standing in close proximity to each other, resulting in Sergeant Hultink being shot in the left hip. Sergeant Hultink and Officer Rivera then moved in one direction, while Sergeant Madsen moved in another direction, each continuing to take fire. The ballistic evidence indicated that the shots from the van covered a wide area. Also, it could be inferred from the evidence that the other shooter was Witcher, who was focused on shooting Sergeant Hultink and Officer Rivera, thereby allowing Fitzpatrick to focus on shooting Sergeant Madsen. Additionally, Witcher drove the van extremely close to Sergeant Madsen and the jury could infer that he intended to give Fitzpatrick a better shot at Sergeant Madsen.

Witcher contends that any direct involvement by him, other than driving the van, is pure speculation and that the testimony as to whether there was more than one shooter in the van was not reliable. However, credibility determinations are left in the province of the jury. [*People v. Avant*, 235 Mich. App. 499, 506; 597 NW 2d 864 (1999)]. Also, it is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v. Hardiman*, 466 Mich. 417, 428; 646 NW2d 158 (2002). Additionally, because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient. *People v. Bowers*, 136 Mich.App 284, 297; 356 NW2d 618 (1984). Thus, viewing the evidence in the light most favorable to the prosecution, we believe that a jury could find beyond a reasonable doubt that Witcher was guilty of three counts of assault with intent to commit murder.

*People v. Deshawn Darelle Witcher*, No. 236188, slip op. at 9-10.

### 2. Legal standard

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

### 3. Facts supporting petitioner's conviction

On September 25, 2000, Mr. Paul Lopp called 911 at approximately 3:00 a.m. to report gunshots near his house. Trial Trans. (May 18, 2001) at 107-10 (docket no. 24).[5] Officers Hultink, Madsen and Rivera responded to the call and approached Mr. Lopp's home. *Id.* at 146-56. Some of them had flashlights because it was dark. *Id.* at 152-56. They spotted a van parked in the driveway next to the house. *Id.* Officer Hultink looked at the van and said "There's someone in the van." *Id.*; Trial Trans. (May 22, 2001) at pp. 21-26 (docket no. 25). At that time, someone in the van shot Hultink. *Id.* The other officers drew their weapons and shot into the van. Trial Trans. (May 22, 2001) at 156, 162-63. Hultink testified that gunshots, i.e., muzzle flashes, were coming both

---

[5] Not all of the trial transcripts are assigned volume numbers. For purposes of this report, the court will initially identify the trial transcripts by both the date (e.g., "May 19, 2001) and this court's docket number (e.g., "docket no. 24").

from the middle of the van and the passenger window in the front of the van. Trial Trans. (May 22, 2001) at pp. 21-26. There were two guns being fired multiple times from van. *Id.* at 34. Shortly thereafter, the van "slammed" into reverse toward Officer Madsen, who was hiding behind Officer Rivera's car, and rammed the van into the car. *Id.* at 63-67. The van struck the car with such force that Madsen thought it was going to flip the car on top of him. *Id.* at 69. Officer Madsen testified that from his perspective, the van was intentionally aimed at striking him as it retreated from the driveway. *Id.* at 70-71.

The van drove for three blocks before being abandoned. *Id.* at 110-20. A dead body was found in the van, with a gunshot to the head. *Id.* The abandoned van also contained a Norinco semiautomatic carbine, a Russian made SKS model semiautomatic carbine rifle, and a semiautomatic 9 mm handgun. Trial Trans. (May 22, 2001) at p. 174; Trial Trans. (May 24, 2001) at pp. 102-5 (docket no. 27); Trial Trans. (May 25, 2001) at 58, 73 (docket no. 28); Trial Trans. (May 29, 2001) at 21-22 (docket no. 29).

A tracking dog picked up a scent from the driver's area of the van and pursued it to 356 Truth Drive. Trial Trans. (May 22, 2001) at pp. 216-19. Bobby Singleton, a resident at the address, was a friend of petitioner. Trial Trans. (May 23, 2001) at pp. 8-9 (docket no. 26). Singleton testified that petitioner came to the apartment at around 3:00 a.m. *Id.* at 10-13. He had visible, deep injuries to his arm, shoulder and leg. *Id.* The police arrived at 7:00 a.m. to find petitioner in bed. *Id.* at 14-20, 48-52. An ambulance attendant testified that petitioner had a gunshot wound to the right shoulder, a grazing wound in the right biceps and a possible bullet hole in his back thigh. *Id.* at 75-78, 80. Petitioner's DNA was linked to a bloodstain on the front seat. Trial Trans. (May 25, 2001) at pp. 69-73, 179-80.

21

Petitioner was treated with two gunshot wounds, a flesh wound to the right shoulder and a wound in the upper thigh consistent with a hole found in the driver's seat of the van. Trial Trans. (May 24, 2001) at pp. 27-32. Dr. Douglass McDonnell, an expert in emergency medicine, testified that petitioner's shoulder wound was consistent with a person having turned in the driver's seat to face the front passenger door. *Id.* at 30-31.

### 4.    Discussion

Petitioner contends that there is no evidence to support the convictions of assault with intent to kill, because there was "no sound and competent evidence" that petitioner "ever possessed a firearm or ever aided and abetted others in the assault." *See* docket no. 1-3, p. 32. "The prosecutor merely proved that he was in the van when gun fire began, that he panicked, [and] that he drove the van away from the scene." *See* docket no. 1-3, p. 32. The court disagrees. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that petitioner, while sitting in the driver's seat and facing the passenger window of the van, fired one of the three weapons found in the van at the police officers, with the bullets exiting through the passenger window.

Furthermore, a rational trier of fact could have found that petitioner aided the gunmen in attacking the police officers by ramming the van into Officer Rivera's car and fleeing the scene. Under Michigan Law, by maneuvering the van while other occupants of the vehicle fired at the police officers, petitioner participated in a combined effort to kill the three police officers, and met the statutory elements of assault with intent to kill under Michigan law. *See People v. Deshawn Darelle Witcher*, No. 236188, slip op. at 9-10. While petitioner tries to argue with the state court's conclusion that his role as the van's driver met the statutory elements of assault with intent to kill, a sufficiency of the evidence claim "does not invite federal habeas courts to engage in a substantive

22

analysis of state statutory terms" or "transform[] federal habeas courts into super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See also Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994) ("[t]he essential elements of a state crime are defined by state law"); *Cox v. Maxwell*, 366 F.2d 765, 767 (6th Cir. 1966) ("[i]t is within the province of a state to define crimes and to fix the punishment therefor").

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  May 26, 2009                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

23